UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 06-244 (DSD/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Rashon Cornellous Jones, | |
| Defendant. | |

David M. Genrich, Assistant United States Attorney, for the Government.
Gregory J. Schmidt, for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 7, 2006, on Defendant's Motion to suppress physical evidence [#14] and Defendant's Motion to suppress statements [#15]. At the hearing, the Court received testimony from Minneapolis Police Officer Griffin Hillbo. The Government submitted a hand drawn diagram of the corner of 36th Avenue North and Fremont Avenue North as Government's Exhibit Number 1. Both parties submitted the tape recording of the Interview of Defendant at the Hennepin County Jail as Joint Exhibit Number 1. These matters were referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motions be granted in part and denied in part.

### I.   FINDINGS OF FACT

**A.   Testimony of Minneapolis Police Officer Griffin Hillbo**

Minneapolis Police Officer Griffin Hillbo (hereinafter "Officer Hillbo") testified that he has worked for the Minneapolis Police Department for eight years and is currently assigned to the Strategic Tactical Operations ("STOP") division. The STOP division is comprised of tactical or

SWAT officers and focuses its efforts on high crime areas. Officer Hillbo is a SWAT officer.

Officer Hillbo testified that on June 24, 2006, he was on duty with the STOP division. Officer Hillbo was in an unmarked white van with four other officers. Officer Hillbo testified that he was driving the white van and that all the officers in the van were in uniform. Officer Hillbo testified that, at approximately 8:40 p.m., the white van was in the area of 36th Avenue North and Fremont Avenue North in Minneapolis. Officer Hillbo testified that this area is a high crime area, as it has developed numerous shots calls and narcotics calls. There is a convenience store located on the southeast corner of 36th Avenue North and Fremont Avenue North. When Officer Hillbo's van approached this area it was stopped at a stop sign facing east on 36th Avenue North. While stopped at the stop sign Officer Hillbo observed Defendant walk out of the convenience store and walk south. At that point Officer Hillbo testified that he was 60 to 70 feet away from Defendant, and that it was still light outside. Officer Hillbo testified that when Defendant left the store he appeared to be eating something, and that Defendant looked over at the van, stopped eating, and stared hard at the van. Officer Hillbo testified that Defendant appeared to make eye contact with him and the other officer in the passenger seat. Officer Hillbo testified that Defendant was acting suspicious and nervous, and that Defendant continuously stared at the van while he continued to walk south down the sidewalk. Officer Hillbo testified that the van stayed stopped at the stop sign while the officers observed Defendant's progress south on Fremont Avenue North.

Officer Hillbo testified that he and the other officers talked about Defendant's behavior because Defendant was walking abnormally while staring at the van, and this behavior seemed strange. Officer Hillbo testified that Defendant walked 20 to 30 feet down Fremont Avenue while he continuously stared at the white van. After Defendant walked approximately 20 to 30 feet,

2

Officer Hillbo turned the van right to travel south on Fremont Avenue. Officer Hillbo testified that he pulled the van over into the lane of oncoming traffic and parked the van at the curb behind Defendant. Officer Hillbo testified that he approached Defendant for the purpose of conducting what he described as a "voluntary stop" to see why Defendant was so nervous. Officer Hillbo testified that, until the van stopped at the curb, Defendant continued to walk south on Fremont Avenue.

Officer Hillbo testified that once the van stopped all of the officers exited the van and Defendant turned around and began running northbound on Fremont Avenue. Officer Hillbo testified that none of the officers grabbed or attempted to grab Defendant at that time. Three of the other officers in the van chased after Defendant. Officer Hillbo testified that he observed Defendant drop items as he ran, and Officer Hillbo testified that he immediately recognized one of the items as a firearm. Officer Hillbo was ten to fifteen feet away from Defendant when he dropped the firearm. Officer Hillbo testified that he ran to confirm that the item was a firearm, and then yelled to the other officers that he had located a firearm that Defendant dropped when he fled. Officer Hillbo testified that he secured the firearm, got inside the van and attempted to assist in the pursuit of Defendant. Defendant was apprehended by another officer a short time later at 36th Avenue North and Dupont Avenue North. Officer Hillbo went to 36th Avenue North and Dupont Avenue North and assisted the other officer in handcuffing Defendant. Officer Hillbo testified that Defendant was arrested for probable cause weapons violation. Defendant was searched incident to his arrest and ten bags of marijuana were located in his pants pocket.

After searching Defendant at the scene of his arrest, Officer Hillbo drove the van back to the spot where Defendant fled. The other officer walked Defendant back to that same spot. At that

location Officer Hillbo recovered the other items Defendant dropped when he ran. These items included another bag of marijuana, a marijuana blunt, a baseball hat with "TC" written on it, a box of swisher sweet cigars, two cell phones and two cell phone holders. The van did not have the capacity to transport Defendant to the Hennepin County Jail, so Officer Hillbo called a squad car to transport Defendant. It took several minutes for the squad car to arrive and transport Defendant to the fourth precinct. Officer Hillbo also went to the fourth precinct and transported Defendant from the fourth precinct to the Hennepin County Jail. While in transport Officer Hillbo testified that Defendant stated that the two cell phones belonged to him. However, during cross-examination, Officer Hillbo testified that he did not remember if Defendant made this statement at the scene of his flight while he waited for the squad car, or afterwards when Defendant was in the squad car being taken to the Hennepin County Jail. Officer Hillbo testified that he did not read Defendant his *Miranda* rights, and he did not recall if there was any conversation immediately preceding this statement.

      **B.**      **The Tape Recorded Statement**

Once Defendant was transported to the Hennepin County Jail, he was interviewed by Minneapolis Police Sergeant Jacobsen (hereinafter "Sergeant Jacobsen"). Sergeant Jacobsen began the interview by confirming Defendant's name, date of birth, address, telephone number, and his place of birth. Sergeant Jacobsen then told Defendant that he wanted to talk about the circumstances surrounding Defendant's arrest. Sergeant Jacobsen stated:

> I have to read you your rights and read them on tape, then you can decide at that time if you want to talk to me. Okay, you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer now and have that lawyer present now or anytime during questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you without cost. Do you understand these rights?

(Joint Exhibit Number 1.) Defendant responded "Yes sir". The following exchange then occurred:

> Sergeant Jacobsen: Okay, with those rights in mind, do you want to talk to me now?
> Defendant: Uh, if I can get, Can I get a lawyer like, right now, or do I have to wait?
> Sergeant Jacobsen: You have to wait.
> Defendant: Well, I'll talk to you now then.
> Sergeant Jacobsen: Okay.
> Defendant: I don't feel like waiting.
> Sergeant Jacobsen: Just so you know, that you know, you don't have to talk to me and if you want a lawyer, well, you know
> (Garbled exchange for approximately two seconds as both Sergeant Jacobsen and Defendant are talking at the same time)
> Sergeant Jacobsen: Alright, I just want to make sure that you know that, so I'm not violating your rights.

(Joint Exhibit Number 1.)

Defendant now moves to suppress physical evidence seized from him [#14]. Defendant argues that the evidence seized from him was a violation of the Fourth Amendment. In addition, Defendant moves to suppress the two statements he made in the present case [#15]. Defendant argues that he was subjected to custodial interrogation in the back of the squad car without the benefit of a *Miranda* warning; therefore, the statement he made regarding ownership of the cellular telephones located at the scene should be suppressed. In addition, Defendant argues that the statement he made at the Hennepin County Jail should also be suppressed, as he validly invoked his right to counsel. The Government opposes Defendant's motions.

## II.   CONCLUSIONS OF LAW

**A.   The Evidence Recovered From Defendant and From His Flight Path Is Admissible.**

**1.   The Evidence Recovered From Defendant's Flight Path is Admissible**

The Government argues that the present case is controlled by the holding of the United States Supreme Court in *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, two police officers

in an unmarked car were patrolling a high crime area late at night when they turned the corner and observed four or five adolescents "huddled around a small red car parked at the curb." *Id*. at 622. When the adolescents saw the unmarked car approaching they scattered in several directions. *Id*. at 622-23. The officers became suspicious and chased the adolescents. One of the officers jumped out of the car and pursued the defendant on foot. The defendant did not notice that the officer was approaching until the officer was just behind the defendant. At that point, the defendant threw away "what appeared to be a small rock" and a moment later he was tackled by the pursuing officer. *Id*. at 623. The officer then handcuffed the defendant and radioed for assistance. The rock was retrieved and it tested positive for crack-cocaine. *Id*. at 623.

The Supreme Court granted certiorari to determine "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id*. at 623. The Supreme Court noted that the defendant's "defense relie[d] . . . upon the proposition that a seizure occurs 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen.'" *Id*. at 625 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968)) (*emphasis added*). The defendant contended that the officer's "pursuit qualified as a 'show of authority' calling upon Hodari to halt." *Id*. at 625-26. The Supreme Court concluded that "[t]he narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not." *Id*. at 625-26. The Court held that "[a]n arrest required *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *Id*. at 626. The Supreme Court concluded

> [i]n sum, assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that

6

injunction he was not seized until he was tackled. The cocaine abandoned while he was running in this case was not the fruit of a seizure.

*Id*. at 629.

The holding in *Hodari D.* is controlling. In *Hodari D.*, the Court held that because the seizure was not effectuated until the defendant either submitted to the show of authority or the officer applied some amount of physical force to the defendant, discarded evidence later recovered by police, was not the fruit of an unlawful seizure, even if the police lacked any reason to begin the pursuit. In the present case, like the suspect in *Hodari D*, Defendant here was running from police. He neither submitted to their show of authority nor did any of the officers apply physical force to Defendant. Pursuant to the holding in *Hodari D.*, any evidence discarded by Defendant during his flight was not the fruit of a Fourth Amendment seizure regardless of whether the police had any legal basis to compel Defendant to stop in the first place.[1] The Court recommends that Defendant's

---

[1]    In *Hodari D.*, as here, a young man fled at the sight of the police, for no apparent reason. The police pursued and apprehended the him. The state in *Hodari D.* conceded that the police had no reason to pursue the young man in the first place. In his opinion for the Court, Justice Scalia observed in a footnote,

> "That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident, and arguably contradicts proverbial common sense. See Proverbs 28:1 ("The wicked flee when no man pursueth"). We do not decide that point here, but rely entirely upon the State's concession." 499 US at 624, n.1.

In so noting, Justice Scalia appears to have ignored the Court's long history of rejecting this "proverbial common sense." In *Wong Sun v. United States*, 371 U.S. 471, 483 (1963) Justice Brennan, relying upon Supreme Court precedent dating to 1896, observed:

> "Although the question presented here is only whether the petitioner's flight justified an inference of guilt sufficient to generate probable cause for his arrest, and not whether his flight would serve to corroborate proof of his guilt at trial, the two questions are inescapably related. Thus it is relevant to the present case that we have consistently doubted the probative value in criminal trials of evidence

motion to suppress physical evidence be denied insofar as it relates to the items that Defendant dropped as he fled police.

### 2. Defendant's Subsequent Arrest Was Based on Probable Cause

Once Defendant fled, he dropped a firearm in his wake. At that point, officers had probable cause to arrest Defendant, as they had probable cause to believe that Defendant had committed a weapons violation. As noted by the Eighth Circuit, "[p]robable cause to arrest exists if the facts and circumstances known to an officer would warrant a person of reasonable caution in believing that

---

> that the accused fled the scene of an actual or supposed crime. In Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051 [1896], this Court said:
>
>> '* * * it is not universally true that a man who is conscious that he has done a wrong, 'will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right, and proper,' since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion."

Thirty years before Justice Brennan, Chief Justice Charles Evans Hughes also quoted with approval the Court's 19th century precedent rejecting the wisdom of this proverb. *See, Quercia v. United States,* 289 U.S. 466, 471 (1933).

Finally, in *Illinois v. Wardlow*, 528 U.S. 119 (2000) the Supreme Court rejected the state's request to "announce a 'bright-line rule' authorizing the temporary detention of anyone who flees at the mere sight of a police officer." At the same time the Court also rejected, Wardlow's request that it "adopt the opposite *per se* rule-that the fact that a person flees upon seeing the police can never, by itself, be sufficient to justify a temporary investigative stop of the kind authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." For the reasons set forth in the text, we have no need to decide whether the police here had a reasonable basis upon which to make their "voluntary stop" to begin with.

the suspect has, is, or will soon, commit an offense." *United States v. McKay*, 431 F.3d 1085, 1090 (8th Cir.2005). The determination of whether probable cause exists to arrest a person depends on the totality of the circumstances. *Id*. In the present case, the facts and circumstances known to the officers would warrant "a person of reasonable caution in believing that [Defendant] has . . . commit[ed] an offense" and that offense was a weapons violation. *Id*; *see* Minn. Stat. § 624.714, subd. 1a ("A person, other than a peace officer . . . who carries, holds, or possesses a pistol . . . on or about the person's clothes or the person, or otherwise in possession or control in a public place . . . without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor.") Therefore, the officers in the present case had probable cause to arrest Defendant, and Defendant was validly arrested once he was apprehended.

### 3. All the Evidence Seized from Defendant Pursuant to the Search Incident to Arrest is Admissible.

Once Defendant was arrested, he was immediately searched for weapons and contraband. A search incident to arrest is an exception to the general requirement that police possess a search warrant prior to executing a search. *New York v. Belton*, 453 U.S. 454, 457 (1981). Once a defendant is lawfully arrested, a law enforcement officer is empowered to " search . . . the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969). The search incident to arrest must take place contemporaneously with the arrest of the defendant. *United States v. Morales*, 923 F.2d 621, 627 (8th Cir.1991).

In the present case, Defendant was validly arrested, and he was immediately searched once he was apprehended by police. This search was of Defendant's person, and was contemporaneous with his arrest. As Defendant was lawfully arrested, he was lawfully subjected to a search incident to arrest. Therefore, the Court recommends that Defendant's motion to suppress physical evidence

[#14] be denied, as the evidence seized from Defendant's person was the result of a lawful search incident to arrest.

      **B.**    **The Statement Defendant Made Regarding the Two Cellular Telephones is Admissible as a Spontaneous Utterance.**

Pursuant to *Miranda v. Arizona,* 384 U.S. 436, 444 (1966) "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir.1990). Any statements taken in violation of this directive are subject to suppression. *Miranda*, 384 U.S. at 476.

In the present case it is clear that Defendant was in custody when he made the statement at issue, and he was not provided with a *Miranda* warning prior to making the statement. Therefore, the sole issue to be decided by this Court is whether Defendant's statement was the product of interrogation.

As stated by the United States Supreme Court, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response . . . from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)(footnote omitted). However, "*Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir.2005)(citing *United States v. Hawkins*, 102 F.3d 973, 975 (8th Cir.1996), *cert. denied*, 520 U.S. 1179 (1997)).

In the present case, there is no testimony that Officer Hillbo engaged in either express questioning or its functional equivalent. Although Officer Hillbo testified on cross-examination that

he could not remember the specific context of the statement; that is, whether Defendant was at the scene of his flight or in the back seat of the squad car when he made the statement, there was no testimony elicited that Officer Hillbo engaged in express questioning or its functional equivalent prior to time when Defendant made the statement that the two cell phones were his. The Court concludes that this statement was a spontaneous statement that was not made in response to express questioning or its functional equivalent. Therefore, the Court recommends that Defendant's motion to suppress statements [#15] be denied insofar as it relates to Defendant's statement to Officer Hillbo that the two cellular telephones belonged to him.

      **C.**    **The Statement Defendant Made at the Hennepin County Jail Must be Suppressed.**

To protect the rights guaranteed by the Fifth Amendment the Supreme Court adopted the *Miranda* rules to be followed during custodial interrogations. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A suspect in custody must be warned that he has "a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Id*. Officers must explain these rights to a suspect before questioning begins. *See Id*. at 469-70. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *See Stansbury v. California*, 511 U.S. 318, 322 (1994). After the warnings have been given, if the suspect indicates in any manner at any time during questioning that he wishes to remain silent or that he wants an attorney, the interrogation must cease. *See Miranda*, 384 U.S. at 473-74.

After the reading of the *Miranda* warnings, a suspect's waiver of the Fifth Amendment privilege against self incrimination is only valid if it is made voluntarily, knowingly, and intelligently. *See Miranda*, 384 U.S. at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir.2002). A waiver is knowing if it is "made with a full awareness of both the nature of the right

being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986). A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. "The government has the burden of proving by a preponderance of the evidence that, under the particular facts and circumstances of the case, the waiver was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege." *United States v. Black Bear*, 422 F.3d 658, 663 (8th Cir.2005) (citing *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir.2004)(en banc)).

The Government has not met its burden to prove by a preponderance of the evidence that, under the particular facts and circumstances of this case, Defendant's waiver was an intentional, voluntary, knowing and intelligent waiver of his *Miranda* rights. When Sergeant Jacobsen initially read Defendant his rights, he stated that Defendant "had a right to a lawyer now and to have that lawyer present now or anytime during questioning." This statement was a correct statement of Defendant's rights. At that point Defendant's right to an attorney was clear. However, Sergeant Jacobsen created confusion when Defendant asked "Can I get a lawyer like, right now, or do I have to wait". Sergeant Jacobsen responded "You have to wait".

While the Government argues that Defendant's statement was, at best, an ambiguous request for counsel, the Court disagrees. The only ambiguity in the present case was created by Sergeant Jacobsen when he first told Defendant that he had "a right to a lawyer now" and then proceeded to tell Defendant that he had to wait for a lawyer. The Government has the burden to establish a knowing and voluntary waiver of Defendant's *Miranda* rights. By reason of the above noted exchange between Sergeant Jacobsen and Defendant, the Government has not met that burden. Sergeant Jacobsen's first statement was correct: Defendant had an immediate right to an attorney.
---

The Supreme Court made clear in *Miranda* that a criminal suspect has a right to a lawyer whenever he is subjected to custodial interrogation. If the police are unable to honor a suspect's assertion of that right, the only option is to terminate the interview. Here, Sergeant Jacobsen didn't do that. He instead attempted to use to his advantage the police department's inability to provide Defendant with counsel. He told the Defendant that if he wanted to consult with a lawyer, he would have to wait, suggesting that he did not have a right to consult a lawyer during the custodial interrogation but only at some later, unidentified time. Under this circumstance, Defendant's decision to talk to the Sergeant without a lawyer was clearly <u>not</u> a knowing and voluntary waiver of his Fifth Amendment right. Therefore, under the facts and circumstances of the present case, the Court concludes that Defendant was subjected to custodial interrogation without validly waiving his *Miranda* rights. Defendant's Motion to suppress statements [#15] must be granted insofar as it relates to the statement Defendant made to Sergeant Jacobsen at the Hennepin County Jail.

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to suppress physical evidence [#14] be **DENIED** and Defendant's Motion to suppress statements [#15] be **granted in part** and **denied in part** as follows:

1. Insofar as the motion relates to Defendant's statement to Officer Hillbo regarding the two cellular telephones, the motion should be **DENIED**.

2. Insofar as the motion relates to Defendant's statement to Sergeant Jacobsen at the Hennepin County Jail, the motion should be **GRANTED**.

DATED: November 21, 2006            s/ *Franklin L. Noel*
                                    FRANKLIN L. NOEL
                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 6, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 6, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.